**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JANE DOE (A.M.C.) an individual, | |
| Plaintiff | |
| v. | CIVIL ACTION NO. 2:25-cv-851 |
| RED ROOF INNS, INC.; RRF HOLDING COMPANY, LLC; RED ROOF FRANCHISING, LLC; RRI WEST MANAGEMENT LLC; and RASHI LLC | |
| Defendants. | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Jane Doe (A.M.C.), Plaintiff in the above-styled and numbered cause, files this Original Complaint against Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; RRI West Management, LLC; and RASHI LLC as Defendants, and would respectfully show the Court and jury as follows:

## SUMMARY

1.      Jane Doe (A.M.C.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in a hotel owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.      Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for traffickers and sex buyers.

1

3.     Some victims are brought into trafficking through abduction or use of physical violence, while many other trafficking relationships begin with a false promise of a romantic relationship or financial security.[1] Traffickers often prey on individuals with vulnerabilities that make them more susceptible to coercion and control.[2]

4.     Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1591, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

5.     In 2008, Congress intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

6.     Jane Doe (A.M.C.) alleges that Defendants derived financial benefit from facilitating sex trafficking by providing a venue where traffickers could exploit victims, including Jane Doe (A.M.C.), with minimal risk of detection or interruption. Jane Doe (A.M.C.) further alleges that Defendants enabled traffickers, including her own trafficker, despite obvious and apparent signs of sex trafficking in these hotels. Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

7.     Defendants had the opportunity to prevent the severe and permanent harm that Jane Doe (A.M.C.) experienced as the result of continuous trafficking. Defendants failed to do so. Instead, Defendants recklessly and/or negligently facilitated her sex trafficking. Accordingly, Jane Doe (A.M.C.) files this lawsuit.

---

[1] The National Prevention Toolkit, Sex Trafficking, https://nationaltoolkit.csw.fsu.edu/leo/part-2/sex-trafficking
[2] Polaris Project, Sex Trafficking: The Basics, https://polarisproject.org/understanding-human-trafficking/

## PARTIES

8.     Plaintiff, Jane Doe (A.M.C.), is a resident of Florida. She may be contacted through her lead counsel, whose information is contained below.

9.     Jane Doe (A.M.C.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was provided for the purpose of being caused, through force, fraud or coercion, to commit a commercial sex act.

10.    The trafficking of Jane Doe (A.M.C.) occurred in or affected interstate commerce.

11.    Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing the identity of Jane Doe (A.M.C.).

12.    Defendant Red Roof Inns, Inc. is a Delaware corporation with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.

13.    Defendant RRF Holding Company, LLC is a Delaware corporation with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.

14.    Defendant Red Roof Franchising, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

15.    Defendant RRI West Management, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Capitol Corporate Services, Inc., 4568 Mayfield Road, Suite 204, Cleveland, Ohio 44121.

16.    Defendants Red Roof Inns, Inc., RRF Holding Company, LLC, Red Roof Franchising, LLC, and RRI West Management, LLC are referred to collectively as "Franchisors"

or "RRI Defendants." At all relevant times, the RRI Defendants were the franchisors for the Red Roof Inn hotel located at 2930 Hospitality Street, Tallahassee, Florida 32303.

17.     Defendant Rashi LLC is a for profit limited liability company with its principal place of business in Florida. It can be served through its registered agent: Divyesh Patel, 2930 Hospitality Street, Tallahassee, Florida 32303, or wherever he may be found. Defendant Rashi LLC has been served and made an appearance in this lawsuit. Defendant Rashi LLC will be referred to as "Franchisee" or "Franchisee Defendant." At all relevant times, Defendant Rashi LLC owned, operated, controlled, and managed the Red Roof Inn hotel located at 2930 Hospitality Street, Tallahassee, Florida 32303.

18.     RRI Defendants and Franchisee Defendant will be referred to collectively as "Defendants."

## JURISDICTION AND VENUE

19.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because one or more Defendants resides in this district.

21.     Each of the RRI Defendants participated in a joint venture operating the subject hotel from a central location at the RRI corporate offices in New Albany, Ohio, within this district. On information and belief:

   a. The relationship between the RRI Defendants was centered at the RRI corporate offices in the Southern District of Ohio.

   b. The RRI Defendants signed agreements with one another related to the subject hotel from RRI corporate offices in the Southern District of Ohio.

   c. The RRI Defendants exercised joint control over operations of the subject hotel from a central location at RRI corporate offices in the Southern District of Ohio.

    d. The RRI Defendants distributed revenue earned from the subject hotel among themselves from RRI corporate offices in the Southern District of Ohio.

    e. The RRI Defendants developed policies for the subject hotel from RRI corporate offices in the Southern District of Ohio.

    f. The RRI Defendants communicated with one another regarding operation of the subject hotel from RRI corporate offices in the Southern District of Ohio.

22. Plaintiff's claims against Franchisee arise out of Franchisee's contacts with Ohio through Franchisee's relationship with the RRI Defendants, which have their principal place of business in the Southern District of Ohio. Franchisee's participation in a venture with the RRI Defendants operating the subject hotel occurred, in substantial part, in Ohio because:

    a. Upon information and belief, Franchisee actively sought out a franchising relationship by contacting the RRI Defendants in Ohio.

    b. Franchisee acknowledged that the execution and acceptance of the franchising agreement occurred in the Southern District of Ohio.

    c. The franchising agreement had a choice of law provision selecting the law of Ohio as the governing law.

    d. The franchising agreement required Franchisee to irrevocably submit itself to the jurisdiction of Ohio courts and waived all objections to personal jurisdiction and service of process.

    e. The franchising agreement required Franchisee to report information to the RRI Defendants in Ohio, including information about all incidents involving safety, security, public relations, or serious injury to persons or property that occur at, or involve, the subject motel, including those involving sex trafficking victims.

    f. Franchisee agreed to submit all notices required under the franchising agreement to the RRI Defendants in the Southern District of Ohio.

    g. Franchisee was required to attend training and meetings in Ohio.

    h. The RRI Defendants dictated policies related to safety, security, human trafficking, employee training and response as well as other subjects from their principal place of business in the Southern District of Ohio.

i. Franchisee had an ongoing obligation to participate in centralized programs operated by the RRI Defendants from their principal place of business in the Southern District of Ohio.

j. Upon information and belief, reservation information for rooms at the subject hotel passed through a system operated and managed by the RRI Brand Defendants from their principal place of business in Ohio.

k. Upon information and belief, payment information for rooms at the subject hotel passed through a system operated and managed by the RRI Defendants in Ohio.

l. The benefit that Franchisee received from room rentals was governed by the Ohio franchising agreement.

m. Franchisee agreed to make all payments due under the franchising agreement at the RRI Defendants' principal place of business in the Southern District of Ohio.

n. Franchisee's operation of the subject hotel was controlled and/or influenced by many policies set and enforced by the RRI Defendants from their principal place of business in Ohio. Including those policies specifically related to prostitution, commercial sex, human and sex trafficking.

23.     Franchisee Defendant was a Red Roof Inn corporate affiliate who participated in a joint venture with the RRI Defendants centered in the Southern District of Ohio as described above, **and** parties to franchising agreements and management agreements with the RRI Defendants, thereby operating the subject hotel at issue in substantial part, in Ohio, as described above.

24.     Upon information and belief, Franchisee Defendant contractually consented to jurisdiction in the Southern District of Ohio.

## **STATEMENT OF FACTS**

## I.     **Jane Doe (A.M.C.) is a Survivor of Unlawful Sex Trafficking at a Hotel Owned, Operated, Managed and Controlled by Defendants**

25.     Jane Doe (A.M.C.) met her trafficker in 2014. Jane Doe (A.M.C.) formed a relationship with a man having no reason or knowledge to suspect that she would be forced into sex trafficking. However, continuously Jane Doe (A.M.C.) was forced to engage in commercial

6

sex acts numerous times a day by her trafficker who physically and mentally abused her. Jane Doe (A.M.C.) feared for her life.

26. At various times continuously between January 1, 2015, to March 27, 2015, Jane Doe (A.M.C.) was trafficked at the Red Roof Inn located at 2930 Hospitality Street, Tallahassee, Florida 32303 ("Subject Red Roof Inn"). Jane Doe (A.M.C.) was trafficked through force, fraud and coercion by her trafficker and was required to engage in numerous commercial sex acts for his financial benefit.

27. Jane Doe (A.M.C.) was not allowed to keep any of the money she made.

28. Jane Doe (A.M.C.)'s sexual exploitation repeatedly occurred in rooms of the Subject Red Roof Inn and was facilitated by the RRI Defendants and Franchisee Defendant.

29. Between January 1, 2015, to March 27, 2015, Jane Doe (A.M.C.) was trafficked an incalculable number of times at the Subject Red Roof Inn.

30. There were obvious signs that Jane Doe (A.M.C.) was being trafficked at the Subject Red Roof Inn such that the RRI Defendants and Franchisee Defendant knew or, through the exercise of reasonable diligence should have known, that they were benefiting from a venture causing her sexual exploitation.

31. Some of the obvious signs of Jane Doe (A.M.C.)'s trafficking at the Subject Red Roof Inn included the fact that hotel rooms were paid for in cash or with prepaid cards, she had few or no personal belongings, the "Do Not Disturb" sign was constantly displayed on the room door, and there was heavy foot traffic in and out of her room involving men who were not hotel guests. These men entered and left at unusual hours and stayed only briefly. In addition, Jane Doe (A.M.C.)'s trafficker reserved multiple rooms at once and operated an extensive trafficking operation out of the Subject Red Roof Inn, with over approximately seventeen women being

trafficked at the property—often two or three to a room. Hotel staff, including housekeeping personnel, were paid to remain silent and avoid drawing attention to the activity occurring in the rooms.

32.     During Jane Doe (A.M.C.)'s trafficking period, there were two types of Red Roof Inn properties: corporate properties operated by corporate affiliates and franchised properties owned by third-party franchisees and operated in conjunction with Red Roof Inn affiliates and as agents of Red Roof Inn affiliates.

33.     At all relevant times, the Subject Red Roof Inn was a hotel branded by the RRI Defendants.

34.     At all relevant times, Franchisee Defendant owned, operated, and managed the Subject Red Roof Inn and employed the staff at the Subject Red Roof Inn through the franchising system of the RRI Defendants.

35.     At all relevant times, the RRI Defendants were directly involved in the relevant operations of the Subject Red Roof Inn and exercised systemic control over Franchisee Defendant with respect to operation of the Subject Red Roof Inn such that Franchisee Defendant was the RRI Defendants' actual agent for operation of the Subject Red Roof Inn. The RRI Defendants also retained control over aspects of the operations of the Subject Red Roof Inn directly related to the claims of Jane Doe (A.M.C.). Further, the RRI Defendants together with Franchisee Defendant, acted as the joint employer for the staff of the Subject Red Roof Inn.

36.     The trafficker of Jane Doe (A.M.C.) and other sex traffickers frequently used the Subject Red Roof Inn for sex trafficking. There were obvious signs that Jane Doe (A.M.C.) was being trafficked at the Subject Red Roof Inn such that the RRI Defendants and Franchisee

Defendant knew or, through the exercise of reasonable diligence should have known, that they were participating in a venture causing her sexual exploitation.

## II. The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem

37.     The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what Defendants knew or should have known regarding the trafficking of Jane Doe (A.M.C.) at the Subject Red Roof Inn.

38.     Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[3] For years, sex traffickers have been able to reap enormous profits with "little risk when attempting to operate within hotels."[4] In 2014, 92 percent of calls to the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[5] Hotels have been found to account for over 90 percent of places where commercial exploitation of children happens most often.[6]

39.     Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.[7]

---

[3] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id*

[4] *See Human Trafficking in the Hotel Industry*, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.

[5] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015), available at: https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf

[6] Erika R. George & Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery*, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

[7] *See, e.g.*, Department of Homeland Security, *Blue Campaign Toolkit*, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

40. Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[8]

41. Widely recognized signs of sex trafficking, which can be observed by hotel staff and which Defendants were made of aware of, include but are not limited to:

    a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

    b. Individuals show signs of physical abuse, restraint, and/or confinement;

    c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

    d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    e. Individuals lack freedom of movement or are constantly monitored;

    f. Individuals avoid eye contact and interaction with others;

    g. Individuals have no control over or possession of money or ID;

    h. Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

    i. Individuals have few or no personal items—such as no luggage or other bags;

---

[8] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023); National Center for Missing and Exploited Children. https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

  j. Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

  k. A group of girls appears to be traveling with an older female or male;

  l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

  m. Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

  n. Possession of bulk sexual paraphernalia such as condoms or lubricant;

  o. Possession or use of multiple cell phones; and

  p. Possession or use of large amounts of cash or pre-paid cards.[9]

  42. The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Tool kits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking.[10] From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

  43. Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing the Subject Red Roof Inn, when enacting and enforcing policies and procedures applicable to that hotel, and when training, educating, and supervising the staff of that hotel.

  44. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue

---

[9] *Id.*
[10] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

from traffickers *without* taking reasonable steps to identify and prevent trafficking in its hotels is a decision to financially benefit by facilitating unlawful sex trafficking.

45.     The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[11] It is also well understood, and specifically trained in hotel safety training courses, that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

46.     The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[12]

47.     All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing the Subject Red Roof Inn, when enacting and enforcing policies and procedures applicable to that hotel and when training, educating, and supervising the staff of that hotel.

48.     The most effective weapon against sexual exploitation and human trafficking is education and training.[13] As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go

---

[11] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

[12] *Id.*

[13] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[14]

49. This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[15] In reference to companies like Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

50. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking necessary steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by facilitating unlawful sex trafficking.

51. Each of the Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

52. Defendants have failed, at all levels, to take appropriate action in response to their knowledge regarding human trafficking in their hotels. Instead, Defendants have continued financially benefiting from providing a venue for the sexual exploitation of victims like Jane Doe (A.M.C.).

---

[14] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.
[15] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

### III.     Sex Trafficking Has Long Been Prevalent at RRI Branded Properties

53.     Defendants' actual knowledge is *not* limited to general awareness of the problem of sex trafficking in the hotel industry. Defendants have also known, or should have known, since well before Jane Doe (A.M.C.) was trafficked at the Subject Red Roof Inn, that sex trafficking is endemic at RRI branded properties, including the Subject Red Roof Inn.

54.     Use of RRI branded properties for sex trafficking is well known to the Defendants. RRI hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints.[16]

### a.     Sex Trafficking at RRI Branded Hotels was Well Known by Defendants

55.     Upon information and belief, each of the Defendants monitored criminal activity occurring at their branded hotels and were aware of activity indicating commercial sex, sex trafficking, or related crimes occurring at those branded hotels, including the Subject Red Roof Inn.

56.     Countless tales of tragedy, which upon information and belief the RRI Defendants know about, establish the entrenched and pervasive nature of the RRI Defendants' role in providing a venue where sex trafficking has continued, unabated, for years. For example, reviews of their branded properties, which upon information and belief the RRI Defendants monitor regularly, also show the pervasiveness of sex trafficking at their branded properties and the RRI Defendants' knowledge of the same.

57.     By way of example, the Woburn, Massachusetts Daily Times reported as early as February 2000 that its Red Roof Inn was facing closure by the city licensing commission as a result

---

[16] https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Federal-Human-Trafficking-Report-Low-Res.pdf; https://traffickinginstitute.org/wp-content/uploads/2022/01/2020-Federal-Human-Trafficking-Report-Low-Res.pdf

of pervasive criminal activity, prostitution and sex trafficking.[17] Such criminal conduct continued unabated until at least 2012, when Vice President of Operations for Red Roof Inn, Joseph Maddux, was forced to appear before the Licensing Commission. Responding to reports of dangerous men using prostitutes as young as fourteen (14) at the Woburn Red Roof Inn and 118 police reports from 2011 alone, Maddux assured the Licensing Commission that Red Roof Inn's President and legal department had been updated and outlined some of the steps the company was considering to address criminal activity including prostitution at its branded properties:[18]

    a. Installation and prominent display of new security systems providing 24-hour monitoring;

    b. Institution of nation-wide changes to its registration policies and the information obtained at check-in;

    c. Increased physical security at Red Roof Inn locations;

    d. Elimination of smoking floor(s); and

    e. Hotel upgrades and price increases to price rooms beyond the criminal clientele.

58.    Sadly, there is no evidence that any such steps were taken in Woburn or across the country. In July 2020, the Woburn License Commission again instituted action against the Red Roof Inn location following over 150 police incident reports including those for "human trafficking, prostitution and drugs…"[19]

59.    Information that has become public through news stories establishes the entrenched and pervasive nature of the RRI Defendants' role in providing a venue where sex

---

[17] https://woburnpubliclibrary.org/wp-content/uploads/2019/03/Woburn-Daily-Times-1904-1980-Non-consecutive-1995-2014.pdf l
[18] http://homenewshere.com/daily_times_chronicle/news/woburn/article_99cddca6-5983-11e1-8393-0019bb2963f4.html
[19] https://woburnma.gov/wp-content/uploads/2020/08/7-23-20-License-Commission-minutes.pdf

trafficking has continued unabated for years. Among notable press involving the frequent use of RRI branded hotels for illegal activity, the following was noted:

a. In 2010, a man and woman appeared in court on charges of trafficking a 14-year-old Milwaukee girl at a Red Roof Inn in Oak Creek, Wisconsin. At the Red Roof Inn, the traffickers gave the girl marijuana to smoke and then took pictures of her naked, which were put on a local website.[20]

b. In 2010, two were charged with transporting a minor to engage in prostitution after a 17-year-old California runaway was trafficked at Red Roof Inn locations in New York and Maryland.[21]

c. In 2012, a Pennsylvania man was indicted by a federal grand jury on charges of sex trafficking involving a 16-year-old girl who was trafficked at a New Jersey Red Roof Inn in May 2012.[22] In 2014 he was sentenced to 10 years in federal prison.[23]

d. In 2012, a Minneapolis police officer investigating juvenile sex trafficking activity spotted an ad on the website Backpage.com that depicted the image of a provocatively dressed young woman offering "unrushed service, full of pleasure." The officer called the number on the ad and spoke with a female who said she was at the Red Roof Inn in Woodbury.[24]

e. In 2012, a Rochester man and woman were charged in a sex trafficking case of a minor. Investigators determined that two customers paid to have sex with the victim and the woman arrested at the Red Roof Inn.[25]

f. In 2012, two teenage girls were human trafficking victims at a RRI in Charlotte, North Carolina. In subsequent interviews with other human trafficking victims, they alleged their pimps would pay RRI managers and maids to not report illegal activities.[26] RRI eventually pulled its brand from the hotel.[27]

---

[20] John Diedrich, *2 face federal sex-trafficking charges*, Milwaukee Journal Sentinel (June 16, 2010), https://archive.jsonline.com/news/crime/96508359.html/

[21] https://www.washingtonexaminer.com/teen-prostituted-held-against-her-will-in-md-and-va-hotels-feds-say

[22] Press Release, The Federal Bureau of Investigation, Pennsylvania Man Charged with Sex Trafficking of a Minor (June 27, 2012), https://archives.fbi.gov/archives/newark/press-releases/2012/pennsylvania-man-charged-with-sex-trafficking-of-a-minor

[23] Michaelangelo Conte, *Man charged with sex trafficking a teen he met in Secaucus takes plea*, nj.com (Mar. 28, 2014), https://www.nj.com/hudson/2014/03/man_originally_charged_with_sex_trafficking_a_16-year-old_he_met_in_secaucus_takes_a_plea.html.

[24] Mike Longaecker, *Police: Sex trafficking victim turns up at Woodbury hotel*, Republican Eagle (August 17, 2012), https://www.republicaneagle.com/news/public_safety/police-sex-trafficking-victim-turns-up-at-woodbury-hotel/article_88eac778-73b4-50cb-ac65-182279d50948.html

[25] Department of Justice, *ROCHESTER MAN AND WOMAN CHARGED IN SEX TRAFFICKING CASE* (Dec. 14, 2012), https://www.justice.gov/archive/usao/nyw/2012/TwoCharged.pdf

[26] *FBI investigating teen human trafficking at Charlotte hotel*, WBTV3 (Sept. 17, 2015), https://www.wbtv.com/story/30058536/fbi-investigating-teen-human-trafficking-at-charlotte-hotel/.

[27] *Id.*

g. In 2013, a 50-year-old man was charged with prostitution and human trafficking, for forcing a woman to perform sex acts against her will at the Red Roof Inn on Eisenhower Boulevard in Pennsylvania.[28]

h. In 2013, a local news station investigated a Florida Red Roof Inn because of the high volume of search warrants that continued to pop up for the hotel, including multiple warrants that reported a high volume of prostitution activity at the hotel.[29]

i. In 2013, a Lubbock grand jury indicted four suspects arrested during a prostitution sting. Police discovered two underage victims during their sting operation at the Red Roof Inn.[30]

j. In 2013, the Knox County Sheriff's Office arrested a Knoxville man for human trafficking at a Red Roof Inn.[31]

k. In 2014, a Cincinnati man plead guilty in U.S District Court to locking up women in his Avondale home, then driving them to Red Roof Inn in Louisville where he forced them into prostitution.[32]

l. In 2014, a Rhode Island man pled guilty to attempted sex trafficking after he was accused of trying to procure customers to have sex with a 23-year-old woman in the Red Roof Inn on Wolf Road on Aug. 22, 2012.[33]

m. In 2014, a man was arrested by the FBI in Orlando for holding a 15-year-old girl in a Phoenix RRI and selling her for sex. He was later sentenced to 8 years in prison.[34]

n. In 2014, a Mississippi man was arrested on human trafficking charges for trafficking a 16-year-old out of a Red Roof Inn in Madison County. He later pled guilty to human trafficking and was sentenced to 25 years in prison.[35]

---

[28] Brittany Miller, *Man charged in prostitution ring headed to Dauphin County court*, Penn Live Patriot News(October 9, 2013), https://www.pennlive.com/midstate/2013/10/post_625.html

[29] https://www.abcactionnews.com/news/motel-frequently-involved-in-criminal-activity-sees-more-than-200-calls-for-service-this-year

[30] *4 indicted on prostitution charges after Red Roof Inn sting*, KCBD News 11 (August 28, 2013), https://www.kcbd.com/story/23272377/4-charged-with-prostitution-offenses-after-red-roof-inn-sting/

[31] https://www.endslaverytn.org/news/knoxville-man-faces-human-trafficking-charges-newsarticle

[32] *https://www.fox19.com/story/27390036/avondale-man-pleads-guilty-to-sex-trafficking-in-louisville/*.

[33] https://www.timesunion.com/local/article/Sex-traffic-case-ends-in-plea-5440052.php

[34] Jamee Lind, *Phoenix man gets 8 years for selling teen for sex*, The Republic (Mar. 30, 2015), https://www.azcentral.com/story/news/local/phoenix/2015/03/30/phoenix-man-sex-trafficking-sentence-abrk/70691190/.

[35] Mary Grace Eppes, *Man sentenced for human trafficking in Madison Co.*, WLBT3 (Jan. 15, 2015), https://www.wlbt.com/story/27862158/man-sentenced-for-human-trafficking-in-madison-co/.

o. In 2015, police arrested 15 men in a sex-with-minors sting at a Red Roof Inn In Woodbury, Wisconsin.[36] The investigation started in 2014 when a man was arrested at the RRI after responding to a Craigslist ad for sex with a 32-year-old and fondling of her deaf daughter.[37]

p. In 2016, two were charged with human trafficking involving a minor following their arrest at a Red Roof Inn in Louisville, Kentucky.[38]

q. In 2016, two were charged in a human trafficking scheme after police arrested them at a Red Roof Inn in Jessup, Maryland.[39]

r. In 2016, two were arrested in New Jersey and accused of running an interstate human trafficking ring out of a Red Roof Inn in Lawrence.[40]

s. In 2016, a man was sentenced to ten years for trafficking a 15-year-old girl at two motels, including a Red Roof Inn in Enfield, Connecticut.[41]

t. In 2016, a man was sentenced for trafficking a minor at a Red Roof Inn in Rochester, New York for an eight-month period in 2012.[42]

u. In 2016, two were arrested on human trafficking charges for forcing a woman into prostitution at an Indiana Red Roof Inn.[43]

v. In 2016, a man was sentenced on human trafficking charges after forcing a woman into prostitution at hotels, including a Red Roof Inn in Massachusetts.[44]

w. In 2016, arrests were made after investigation of a human trafficking operation operating out of hotels, including a Red Roof Inn in Illinois.[45]

---

[36] Mathias Baden, *UPDATE: Police arrest 15 men in sex-with-minors sting at Red Roof Inn*, Republican Eagle (Sept. 23, 2015), https://www.republicaneagle.com/news/public_safety/update-police-arrest-15-men-in-sex-with-minors-sting-at-red-roof-inn/article_e48299f7-e13d-5c86-8e9f-f7faf22a8998.html.
[37] *Id.*
[38] https://www.wave3.com/story/31910401/2-charged-with-human-trafficking-involving-juvenile
[39] https://www.wbaltv.com/article/2-men-charged-in-howard-county-human-trafficking-scheme/7148473#
[40] https://www.trentonian.com/2016/09/01/new-york-man-accused-in-lawrence-sex-rings-boasts-about-600k-manhattan-home/
[41] https://www.courant.com/2016/11/14/hartford-man-sentenced-to-prison-for-sex-trafficking-of-15-year-old-girl/
[42] https://www.democratandchronicle.com/story/news/2016/01/14/rochester-man-sentenced-sex-trafficking/78770804/
[43] https://www.jconline.com/story/news/crime/2016/12/29/court-docs-alleged-pimps-paid-victim-heroin/95952012/
[44] https://www.newburyportnews.com/news/man-gets-5-to-8-years-in-prison-for-human-trafficking/article_79f32b03-3e96-5360-af02-76c53e249dec.html
[45] https://www.shawlocal.com/2016/01/18/joliet-hotel-among-meeting-places-in-rappers-sex-trafficking-ring/alh59bo/

x. In 2016, three were arrested on prostitution charges at a Red Roof Inn in Kentucky.[46]

y. In 2017, a man was charged with sex trafficking victims at a Red Roof Inn in Missouri.[47]

z. In 2017, there were six arrests following a prostitution bust at a Red Rood Inn in Ohio.[48]

aa. In 2017, a man pled guilty to sex trafficking a 14-year-old girl at a Red Roof Inn in Kentucky.[49]

bb. In 2017, twenty-three people were arrested in a human trafficking investigation for trafficking eight girls, between the ages of 14 and 17, at Stockton, California hotels, including the Red Roof Inn.[50]

cc. In 2017, two were arrested for sex trafficking children, including at a Red Roof Inn in Ohio.[51]

dd. In 2018, two men were indicted on charges of child sex trafficking after a 15-year-old girl was found at a Red Roof Inn in Delaware.[52]

ee. In 2018, two were charged for running a sex trafficking operation out of an Illinois Red Roof Inn.[53]

ff. In 2018, a Virginia court upheld a defendant's conviction for sex-trafficking offenses related out of trafficking that occurred at a Virginia Red Roof Inn.[54]

60. Ultimately, several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of RRI branded properties.

---

[46] https://www.wdrb.com/news/crime-reports/louisville-police-arrest-three-during-undercover-prostitution-investigation/article_12b5448c-2857-5b6b-ba04-0aba80d5b5da.html
[47] https://www.stltoday.com/news/local/crime-and-courts/man-charged-with-sex-trafficking-at-red-roof-inn-in-st-louis/article_4c70ac45-ac34-5d28-bd3c-92efde095381.html
[48] https://www.news5cleveland.com/news/local-news/oh-summit/prostitution-bust-summit-co-investigators-fbi-arrest-six-at-springfield-township-red-roof-inn
[49] https://www.courier-journal.com/story/news/crime/2017/06/07/louisville-man-pleads-guilty-sex-trafficking-14-year-old/377971001/
[50] https://www.kcra.com/article/23-arrested-in-san-joaquin-county-human-trafficking/9588063
[51] https://www.cbs58.com/news/two-pastors-arrested-for-sex-trafficking-children
[52] https://www.acenewstoday.com/two-delaware-men-indicted-on-charges-of-child-sex-trafficking/
[53] https://www.wcia.com/news/local-news/two-people-face-charges-for-involvement-in-trafficking-ring/
[54] https://caselaw.findlaw.com/court/va-court-of-appeals/1944156.html

61.     Upon information and belief, the RRI Defendants monitored criminal activity occurring at RRI branded hotels and thus were aware of these incidents and many similar incidents at RRI properties around the country.

62.     Upon information and belief, upper-level executives of the RRI Defendants monitored news stories and law-enforcement reports regarding criminal activity at RRI branded hotels. Upon information and belief, the public relations department for the RRI Defendants would circulate communications discussing criminal activity, including human trafficking and prostitution, at RRI branded properties.

63.     No later than 2013, the RRI Defendants began carefully monitoring online reviews and other customer feedback for RRI branded properties. Indeed, top leadership of the RRI Defendants was "obsessed" with review of customer feedback, including online reviews.[55]

64.     Leadership of the RRI Defendants would receive compiled reviews from Reputology, an online-review aggregator, that compiled reviews for Red Roof Inns all over the country, including the Subject Red Roof Inn.[56] The RRI Defendants responded to directly or required other Defendants to respond to reviews posted on review websites.

65.     Based on information and belief, Defendants managed and monitored online reviews of RRI hotel locations including the following sample:

    a.  A 2007 TripAdvisor review of an RRI branded property in New Jersey states: "This place is a horrible hotel. First, I check in, drop off my luggage, and go get something to eat. I come back to find my room wide open, so I go to the front desk to report it, where i get the "Well, maybe you didnt close the door" and "I'm the only one here, so". The next night, a local prostitute moved in next door and started peddling her wares, so there was traffic all night, and even worse, she was a screamer. So I go to the front desk to report this, where I find the attendant asleep. Don't waste your money here."[57]

---

[55] https://www.usatoday.com/story/travel/hotels/2013/04/05/red-roof-hotel-outlets/2056817/
[56] https://www.e-marketingassociates.com/blog/use-the-new-hootsuite-reputology-app-to-monitor-online-reviews
[57] https://www.tripadvisor.com/Hotel_Review-g46649-d223813-Reviews-Red_Roof_Inn_Mt_Laurel-Mount_Laurel_New_Jersey.html

b. A 2008 Expedia review of an RRI branded property in California states: "Prostitutes were in the local area and were using this hotel for their "business meetings"."[58]

c. A 2008 TripAdvisor review of an RRI branded property in Pennsylvania states: "This place is not only dirty but it is unsafe. The women of this town must use this hotel as hunting ground. The drug dealers are happy to see anyone check in because the think it is an instant sale. Cops swarm the parking lot continuously. Men walk the halls all hours of the day and night looking for drugs. Hookers walk the halls looking for their next guy. One hooker by the name of "Kimmy" approached my husband and wanted him to pay for sex with her when he refused she with with the next available guy. About 2 in the morning she is knocking on our door asking for my husband and wanted him to go party with him. I kicked "Kimmy" out and called the desk. They did nothing. Are the getting a pay off from the drug dealers and hookers?"[59]

d. A 2008 Expedia review of an RRI branded property in Ohio states: "…To top it off, I am fairly convinced I saw several prostitutes staying there offering thier services to the ODOT workers who were also guests….."[60]

e. A 2008 TripAdvisor review of an RRI branded property in Washington states: "Hookers passed out in the hall, bathrooms that flooded, topped off by the SWAT team bursting in down the hall at 2 am. This hotel was so dangerous that we complained about the drunk We didn't even have our luggage out of the rental car before two guys got in a screaming fight and ran right past us. It got better a few hours later when a hooker passed out in the hall in front of the room next door and our sleep was interrupted when the SeatTac SWAT team arrived after a dispute between a lady of the evening and a hotel guest that involved a weapon. . . . This is a DANGEROUS place to stay and there is a reason it is cheaper then the other hotels on the same street."[61]

f. A 2010 TripAdvisor review of an RRI branded property in Virginia states: "For the price you pay, this motel is on of the worst i have seen in this area…What you do get is hallways smelling like marijoana and othe illegall drugs. prostitutes renting rooms, drug dealers hanging around the motel, etc. I can't believe that fairfax county police are not aware of these activities. Stay away from this motel if you don't like to expose yourself and your family to such activities mentioned above."[62]

---

[58] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews
[59] https://www.tripadvisor.com/Hotel_Review-g30029-d96250-Reviews-Red_Roof_Inn_Allentown_Airport-Allentown_Pennsylvania.html
[60] https://www.expedia.com/Cincinnati-Hotels-Red-Roof-Inn-Cincinnati-Northeast-Blue-Ash.h17551.Hotel-Reviews
[61] https://www.tripadvisor.com/Hotel_Review-g58732-d217798-Reviews-Red_Roof_Inn_Seattle_Airport_SEATAC-SeaTac_Washington.html
[62] https://www.tripadvisor.com/Hotel_Review-g58202-d243757-Reviews-Motel_6_Washington_DC_SW_Springfield-Springfield_Fairfax_County_Virginia.html

g. A 2010 TripAdvisor review of an RRI branded property in South Carolina states: "The website lies to you. Nothing but pimps and hookers at this hotel. Had a drunk person knock on our door at 2am then the phone rings someone asking for a woman. No toliet paper. Room was dirty. Never again will I use this hotel chain again."[63]

h. A 2010 Expedia review of an RRI branded property in California states: "We stayed only a few hours. We think this place was being used for a weekend drug and prostitution house, way to many people in and out. Lots of noise and yelling."[64]

i. A 2011 Yelp review of an RRI branded property in Maryland states: "This place was close to Washington and we stayed there 5 years ago. How the times have changed, The place reeked of pot smoke and there were hookers in and out of the rooms all night. It must have become some sort of welfare home because families were living there. My second and last night I was woken up by the pimp next door screaming at his girl for not making enough money, he needed to pay for the room and feed her F*^&ing kid who cried in the background. No place to eat near hotel except a Dominos type pizza place and a Chinese restaurant that the Maryland board of health has yet to discover.. On a bright note, no one in our group was killed, maybe because of the constant police presence in the parking lot. DO NOT STAY HERE."[65]

j. A 2011 TripAdvisor review of an RRI branded property in Kentucky states: "We stayed here a few days ago and the young man working the desk was very unprofessional. The whole look of the property was dismal. I am sure it's safe to say that drug dealers and hookers make this their home base. We will never stay at this place again!"[66]

k. A 2012 TripAdvisor review of an RRI branded property in Wisconsin states: "I have stayed at this hotel twice a year for nearly 10 years and have never been as disappointed in the hotel as I was this time. It wasn't the room....the room was great....redone....comfy bed....clean.  However, the PROBLEM was the other guests. There was a party going on above us with people yelling & cussing all night long. We complained to the front desk and nothing was done. Several suspect prostitutes were coming and going at all hours. The parking lot was LITTERED with strange things such as wigs, beer cans, and condoms."[67]

l. A 2012 Tripadvisor review of an RRI branded property in Texas states: "I stayed here for a week and it was a miserable experience. The room was ok but the thugs that frequent were always present on the property made for an uneasy time. There

---

[63] https://www.tripadvisor.com/Hotel_Review-g54258-d227066-Reviews-Red_Roof_Inn_Greenville-Greenville_South_Carolina.html

[64] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews

[65] https://www.yelp.com/biz/red-roof-inn-washington-dc-laurel-laurel

[66] https://www.tripadvisor.com/Hotel_Review-g39604-d224889-Reviews-Red_Roof_Inn_Louisville_Expo_Airport-Louisville_Kentucky.html

[67] https://www.tripadvisor.com/Hotel_Review-g60149-d123051-Reviews-Red_Roof_Inn_Milwaukee_Airport-Oak_Creek_Wisconsin.html

were drug deals, prostitutes, and gang type activity on the property. There were a few thugs that tried to intimidate me and I never felt safe the whole time I was staying there. Trust me... Look elsewhere."[68]

m. A 2012 TripAdvisor review of an RRI branded property in Michigan states: "ABSOLUTELY NEVER STAY HERE - drug dealing and prostitution rife at hotel."[69]

n. A 2013 TripAdvisor review of an RRI branded property in California states: "…Because of our road trip we didn't arrive until 10 pm that night when we arrived there were about 5 prostitutes outside with pimps. We were so frightened we drove around for 30 minutes trying to cancel our stay and because it was after 6 pm they wouldn't allow us to cancel. I'm positive the owner has some sort of deal with the drug dealers and pimps there is no way he doesn't know this is going on. They don't even try to hide it!..."[70]

o. A 2013 TripAdvisor review of an RRI branded property in Mississippi states: "…If you are looking to have a beer with any of the vaqueros standing on each corner of the motel at all hours of day or night, this is the place for you. If you wish easy access to a prostitute down the hall, this is the place for you. If you desire a tattoo from the guy next door who just got out of prison, this is the place for you…"[71]

p. A 2013 TripAdvisor review of an RRI branded property in North Carolina states: "Stayed here this past weekend and had to change rooms 3 times. The inappropiate activites at this hotel were horendous. Prostitutes, dogs everywhere, drug deals and a fight in the parking lot. Would never stay again."[72]

q. A 2013 Yelp review of an RRI branded property in Virginia states: "Honestly i would have given a 1 star but i have to give an extra star for the honesty of the woman there who adamantly admitted that there are lots of prostitutes that stay there.hey at least she was honest about it."[73]

r. A 2013 TripAdvisor review of an RRI branded property in Florida states: "….The corporate office, regional, and general managers WILL be receiving very detailed letters INCLUDING information pertaining to the police department being called because of drug activity AND CONCUBINES/PROSTITUTES as well as the

---

[68] https://www.tripadvisor.com/Hotel_Review-g56003-d223173-Reviews-Red_Roof_Inn_Houston_Westchase-Houston_Texas.html
[69] https://www.tripadvisor.com/Hotel_Review-g42207-d235115-Reviews-Red_Roof_Inn_Flint_Bishop_Airport-Flint_Michigan.html
[70] https://www.tripadvisor.co/Hotel_Review-g33130-d231069-Reviews-Red_Roof_Inn_Stockton-Stockton_California.html
[71] https://www.tripadvisor.com/Hotel_Review-g43833-d225211-Reviews-Red_Roof_Inn_Jackson_Downtown_Fairgrounds-Jackson_Mississippi.html
[72] https://www.tripadvisor.com/Hotel_Review-g49673-d94900-Reviews-Red_Roof_Inn_Wilmington_NC-Wilmington_North_Carolina.html
[73] https://www.yelp.com/biz/red-roof-plus-washington-dc-alexandria-alexandria-2

PEDDLERS asking hotel guests for money. THE WORST HOTEL IVE EVER STAYED AT."[74]

s.  A 2014 TripAdvisor review of an RRI branded property in Oklahoma states: "…. Random meth heads, hookers, and undesirables roaming the property ALL night. Literally all night."[75]

t.  A 2014 Expedia review of an RRI branded property in Ohio states: "…also prostitution going on every dang night along with drug deals in parking lot…"[76]

u.  A 2014 Expedia review of an RRI branded property in North Carolina states: "Great place if you need a hooker or drugs. Never again. Pimps running there girls in and out all night. Two domestic disputes during the night. Got no sleep."[77]

v.  A 2014 Expedia review of an RRI branded property in California states: "It was like out of a movie with all the hookers, and pimps out front. . . ."[78]

w.  A 2014 Expedia review of an RRI branded property in North Carolina states: "No security at this Hotel, and there was a lot of traffic coming in and out of the parking lot all hours of the evening. A lot of undesirables hanging around, pimps and drug dealers. There are some whom set up a porch by their doors indicating that they are living there for extended stays."[79]

x.  A 2015 TripAdvisor review of an RRI branded property in Missouri states: "The scariest of all was definitely when I came across a scene of what appeared a prostitute kneeling and crying in the parking lot while a pimp was yelling at her. Management should look into that."[80]

y.  A 2016 Expedia review of an RRI branded property in Ohio states: "Absolutely terrible. Drugs everywhere, prostitutes. Just not a good hotel."[81]

z.  A 2016 TripAdvisor review of an RRI branded property in Virginia states: "…Prostitutes work out of this hotel. I would never stay here again."[82]

---

[74] https://www.tripadvisor.com/Hotel_Review-g34550-d226822-Reviews-or40-Red_Roof_Inn_Pensacola_I_10_at_Davis_Highway-Pensacola_Florida.html
[75] https://www.tripadvisor.com/Hotel_Review-g51560-d224966-i80249747-Red_Roof_Inn_Oklahoma_City_Airport-Oklahoma_City_Oklahoma.html
[76] https://www.expedia.com/Columbus-Hotels-Red-Roof-Inn-Columbus-Ohio-State-Fairgrounds.h450037.Hotel-Reviews
[77] https://www.expedia.com/Wilmington-Hotels-Red-Roof-Inn-Wilmington.h14416.Hotel-Reviews
[78] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews
[79] https://www.tripadvisor.com/Hotel_Review-g49673-d94900-Reviews-Red_Roof_Inn_Wilmington_NC-Wilmington_North_Carolina.html
[80] https://www.tripadvisor.com/Hotel_Review-g44881-d224932-Reviews-or10-Red_Roof_Inn_Plus_St_Louis_Forest_Park_Hampton_Avenue-Saint_Louis_Missouri.html
[81] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews
[82] https://www.tripadvisor.com/Hotel_Review-g58277-d225059-Reviews-Red_Roof_Inn_Virginia_Beach-Virginia_Beach_Virginia.html#REVIEWS

aa. A 2016 Expedia review of an RRI branded property in Ohio states: "Hookers everywhere…not a safe place to bring the wife & kids that's for sure."[83]

bb. A 2015 Yelp review of an RRI branded property in Ohio states: "They give pimps discounts and the strippers from Christie's cabaret stay here almost exclusively. So there is a lot of drug activity and whores."[84]

cc. A 2016 TripAdvisor review of an RRI branded property in Texas states: "I have to imagine it would be a very reasonably priced casual encounter as well... Let's just say that the pimps were easy to ID and the women standing in the doorways with almost nothing on reminded me of a visit to Amsterdam in my youth. The room was nice enough, but this is quite possibly the most sketchy neighborhood I've ever had a hotel in outside of Europe's Redlight districts."[85]

dd. A 2017 Expedia review of an RRI branded property in Ohio states: "…we checked in early at like 3 pm, but when the sun went down omg !! all the prostitutes started showing up! I was so embarrassed having to explain to my 6 year old daughter why these women were dressed that way!!!"[86]

ee. A 2017 Google review of an RRI branded property in Ohio states: "There are prostitutes in this hotel. A pimp was outside bleeding. Police were called. He was shot."[87]

ff. A 2018 Expedia review of an RRI branded property in Ohio states: "…There were also at least 2 hookers walking around soliciting. We also watched/heard 2 men argue outside, to the point I was afraid someone was going to end up hurt…"[88]

gg. A 2019 Yelp review of an RRI branded property in Ohio states: "…The hotel/motel really, it became obvious this was a live in hotel for some which happens, but it became apparent there was prostitution happening here and it was very very unnerving I was more concerned of the persons moving about the hotel at no

---

[83] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews

[84] https://www.yelp.com/biz/red-roof-inn-canton-north-canton-2

[85] https://www.tripadvisor.com.au/Hotel_Review-g56003-d1577352-Reviews-or40-Red_Roof_Inn_Houston_North_FM1960_I_45-Houston_Texas.html

[86] https://www.expedia.com/Columbus-Hotels-Red-Roof-Inn-Columbus-East-Reynoldsburg.h20658.Hotel-Reviews

[87] https://www.google.com/travel/hotels/Red%20Roof%20Inn%205900%20Pfeiffer%20Rd,%20Blue%20Ash,%20O H%2045242%20google/entity/CgsIpv7r-N3htczhARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4 515404,4597339,4723331,4731329,4757164,4778035,4810792,4810794,4814050,4821091,4861688,4864715,4874 190,4886082,4886480,4893075,4902277,4905351,4906019,4926165,4926489,4930751,4930752,4931360,4936396, 4937897,4938634,4938636,47061553&hl=en-US&gl=us&ssta=1&q=Red+Roof+Inn+5900+Pfeiffer+Rd,+Blue+Ash,+OH+45242+google&grf=EmQKLAgOEigS JnIkKiIKBwjnDxACGA4SBwjnDxACGA8gADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg4N DA1M2VjNDY2NjhiZWQ6MHhlMTk4ZDcwZGRmMWFmZjI2&rp=EKb-6_jd4bXM4QEQpv7r-N3htczhATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwiqqPCyxvH8AhUgQzABHT-DCyEQ4gl6BAhrEAU

[88] https://www.expedia.com.tw/en/Cincinnati-Hotels-Red-Roof-Inn-Cincinnati-East-Beechmont.h25044.Hotel-Reviews

discretion of the place . The hotel had more shady people milling about no security. There were unsavory things going's on "hired persons" if you will…"[89]

hh. A 2019 Expedia review of an RRI branded property in Ohio states: "Cons: Omg! Prostitution happening here. Prostitutes hanging out of their doors even solicited a family member. Shady people. Banging on doors middle of the night. This is what you get for the price…"[90]

66. This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (A.M.C.) was trafficked at the Subject Red Roof Inn, the RRI Defendants knew or should have known, at least the following:

a. The use of their branded properties for sex trafficking was not limited to one location or geographic region but was a widespread problem;

b. Commercial sex work occurring at their branded properties involved trafficking and compelled prostitution;

c. Their franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties;

d. Their efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective; and

e. They were, by their acts and omissions, facilitating sex trafficking at their branded properties by providing venues where that trafficking was occurring widely and without sufficient detection or deterrence.

67. Despite the continually mounting evidence that sex trafficking at RRI branded properties was ongoing and growing, the RRI Defendants did not change course. The RRI Defendants chose to continue earning revenue and profits from renting out space in their hotels, including the Subject Red Roof Inn, as a venue for trafficking.

**b. Sex Trafficking Was Prevalent and Obvious at the Subject Red Roof Inn**

68. The RRI Defendants and Franchisee Defendant also knew or should have known that sex trafficking was prevalent at the Subject Red Roof Inn.

---

[89] https://www.yelp.com/biz/red-roof-inn-cleveland-airport-middleburg-heights-middleburg-heights
[90] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews

69. The RRI Defendants and Franchisee Defendant knew that the Subject Red Roof Inn was in a high-crime area with a known history of reports of sex trafficking.

70. Online reviews of the Subject Red Roof Inn, which upon information and belief were monitored by the RRI Defendants and Franchisee Defendant, establish the nature of the Subject Red Roof Inn's role as a venue for sex trafficking:

a. A 2016 Google Maps review of the Subject Red Roof Inn states: "I Usually Don't Leave Reviews, But This Time I Think I Need Too. Don't Stay Here, I Couldn't Even Leave My Room Withoit Watching Over My Shoulder. There Were Drug Deals And Prostitution Around Every Corner. Especially On The Top Floor. The Guys Would Stand Outside The Rooms And Watch Everyones Move. It Was Terrible. Ive Never Felt So Worried When Staying At A Hotel."[91]

b. A 2018 Google Maps review of the Subject Red Roof Inn states: "If I could leave a 0 rating I would. Hands down the worst hotel I've ever stayed at! We usually stay at red roof inns because of their pets stay free policy but I will forever stay other places fromhere on out! There was without a doubt illegal activity going on! There was a prostitute in the parking lot so I guess if you're into that then this is the place for you, otherwise steer clear!"[92]

c. A 2018 Google Maps review of the Subject Red Roof Inn states: "I was woke up at 1 am to the sound of a couple screaming and throwing things at each other in the next room and there was a lot of coming and going with really loud young people (early twenties) partying at the hotel. I didn't sleep all night and felt very uncomfortable there...I didn't feel safe. I would not go back…"[93]

d. A 2018 Google Maps review of the Subject Red Roof Inn states: "…The room was dilapidated, paint peeling, towels were stained with mascara, and I saw 2 roaches. It was so gross, I considered leaving, but I had already been driving for 14 hours. It was loud and I'm pretty sure there were some illegal activities going on, but at

---

[91] https://www.google.com/maps/reviews/@30.4800196,-84.3068532,17z/data=!3m1!4b1!4m6!14m5!1m4!2m3!1sChZDSUhNMG9nS0VJQ0FnSUNRdnRXUmFnEAE!2m1!1s0x0:0xbf3798f0df137912?entry=ttu&g_ep=EgoyMDI1MDcyOC4wIKXMDSoASAFQAw%3D%3D
[92] https://www.google.com/maps/reviews/@30.4800196,-84.3068532,17z/data=!3m1!4b1!4m6!14m5!1m4!2m3!1sChdDSUhNMG9nS0VJQ0FnSUN3bExtUXJRRRAB!2m1!1s0x0:0xbf3798f0df137912?entry=ttu&g_ep=EgoyMDI1MDcyOC4wIKXMDSoASAFQAw%3D%3D
[93] https://www.google.com/maps/reviews/@30.4800196,-84.3068532,17z/data=!3m1!4b1!4m6!14m5!1m4!2m3!1sChdDSUhNMG9nS0VJQ0FnSUNnNzhUdXBBBRRAB!2m1!1s0x0:0xbf3798f0df137912?entry=ttu&g_ep=EgoyMDI1MDcyOC4wIKXMDSoASAFQAw%3D%3D

least no one broke into my car and I was able to sleep for a few hours. Easily the WORST hotel I have ever stayed in. I was being cheap. It's not worth it."[94]

e.  A 2018 Google Maps review of the Subject Red Roof Inn states: "Don't stay here! The room was disgusting, looked like a porno was shot in the room, urine on the toilet and floor, birn marls on all 4 pillows and some white-ish creamy stuff was literally dripping from the headboard. Refused to stay and immediately demanded my money back. Plus there was some unsavory activities / "Dealings" going on outside in the parking lot."[95]

f.  A 2022 Expedia review of the Subject Red Roof Inn states: "…the staff was fine but the property was literally a drug house. People coming and going out of the rooms on the first floor. Everything smelled like pot and I just did not have a good feeling leaving our vehicles parked out there. Definitely do not stay here…"[96]

g.  A 2023 Google Maps review of the Subject Red Roof Inn states: "… One room had evidence that the door had been broken into. The door face was destroyed as though someone used a battering ram. My daughter told me that she saw a 'woman of the night' in the walkway late at night. I am sorry I took my family into this environment."[97]

h.  A 2025 Expedia review of the Subject Red Roof Inn states: "By far the filthiest most disgusting room I have ever been in ...there were roaches everywhere. There was hair everywhere. The tub handle was broken. The floor looked like someone took a nasty mop and just moved dirt around. When I walked up they were half naked women standing outside smoking pot. Asking me if I wanted to party.... I let the desk know about it. They did nothing about it. I just don't even want to relive it it. It's the most disgusting night at a hotel I had ever had and it was the only open hotel room in the city because of a convention and Expedia overbooked me in a different hotel and this was the only option they could give me and there were homeless people in the parking lot and along the road going to the hotel. It was just disgusting. There was a nasty stain on the bedspread. I'm not going to even go any further"[98]

---

[94] https://www.google.com/maps/reviews/@30.4800196,-
84.3068532,17z/data=!3m1!4b1!4m6!14m5!1m4!2m3!1sChZDSUhNMG9nS0VJQ0FnSURRNmVtaWN3N3EAE!2m
1!1s0x0:0xbf3798f0df137912?entry=ttu&g_ep=EgoyMDI1MDcyOC4wIKXMDSoASAFQAw%3D%3D
[95] https://www.google.com/maps/reviews/@30.4800196,-
84.3068532,17z/data=!3m1!4b1!4m6!14m5!1m4!2m3!1sChdDSUhNMG9nS0VJQ0FnSURRei15SWpBRRAB!2m
1!1s0x0:0xbf3798f0df137912?entry=ttu&g_ep=EgoyMDI1MDcyOC4wIKXMDSoASAFQAw%3D%3D
[96] https://www.expedia.com/Tallahassee-Hotels-Red-Roof-Inn-Tallahassee-University.h18624.Hotel-
Information?pwaDialogNested=PropertyDetailsReviewsBreakdownDialog
[97] https://www.google.com/maps/reviews/@30.4800196,-
84.3068532,17z/data=!3m1!4b1!4m6!14m5!1m4!2m3!1sChZDSUhNMG9nS0VJQ0FnSUN1cmZiU0R3EAE!2m1!
1s0x0:0xbf3798f0df137912?entry=ttu&g_ep=EgoyMDI1MDcyOC4wIKXMDSoASAFQAw%3D%3D
[98] https://www.expedia.com/Tallahassee-Hotels-Red-Roof-Inn-Tallahassee-University.h18624.Hotel-
Information?pwaDialogNested=PropertyDetailsReviewsBreakdownDialog

    i. A 2025 Expedia review of the Subject Red Roof Inn states: "…The entire place on the outside was hard to breath at all hours because of the marijuana in the air I was told the hotel was raided a few weeks ago and lots of prostitutes were arrested. Prostitution seems to still be going on…"[99]

71. Traffickers, including Jane Doe (A.M.C.)'s trafficker, repeatedly chose to use RRI properties for their sex trafficking activity. As such, the RRI Defendants also knew or should have known about the pervasive sex trafficking at the Subject Red Roof Inn based on obvious indicators of this activity.

72. Upon information and belief and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the Subject Red Roof Inn prior to Jane Doe (A.M.C.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their rooms at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation.

73. All knowledge from the staff at the Subject Red Roof Inn is imputed to the RRI Defendants. The RRI Defendants knew about this widespread and ongoing trafficking at the Subject Red Roof Inn, including the trafficking of Jane Doe (A.M.C.), through the direct observations of hotel staff, including management-level staff.

---

[99] https://www.expedia.com/Tallahassee-Hotels-Red-Roof-Inn-Tallahassee-University.h18624.Hotel-Information?pwaDialogNested=PropertyDetailsReviewsBreakdownDialog

74.    Upon information and belief, the RRI Defendants knew or should have known about the widespread trafficking at the Subject Red Roof Inn, based on:

   a.  The obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to the RRI Defendants;

   b.  Defendants' regular monitoring of online reviews;

   c.  Defendants' collection and monitoring of customer surveys and complaints;

   d.  Defendants' regular inspections of the hotel property;

   e.  Information provided to Defendants by law enforcement; and

   f.  Other sources of information available to Defendants.

75.    Upon information and belief, under the RRI Defendants' protocols, which on their face required hotel staff and management to report suspected criminal activity to the RRI Defendants, hotel staff and management were required to report numerous instances of suspected sex trafficking to the RRI Defendants prior to Jane Doe (A.M.C.)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the Subject Red Roof Inn.

   **c.  Defendants Knew Jane Doe (A.M.C.) was Being Trafficked at the Subject Red Roof Inn Because of the Apparent and Obvious "Red Flags" of Sex Trafficking**

76.    During the period that Jane Doe (A.M.C.) was trafficked at the Subject Red Roof Inn, it was apparent she was the victim of sex trafficking.

77.    Because it was known among the community of traffickers that staff at the Subject Red Roof Inn turned a blind eye to sex trafficking, Jane Doe (A.M.C.)'s trafficker made little or no effort to disguise his role or his actions.

78.    At the Subject Red Roof Inn, Jane Doe (A.M.C.) exhibited numerous obvious signs of trafficking, including:

   a.  The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;

b. Multiple rooms were reserved at the same time by her trafficker, who was operating a large-scale trafficking operation involving more than approximately seventeen women, often housing two to three women per room;

c. Other girls were trafficked at the same hotel at the same time as Jane Doe (A.M.C.);

d. There was heavy foot traffic in and out of Jane Doe (A.M.C.)'s room involving men who were not hotel guests;

e. Jane Doe (A.M.C.) had multiple johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time;

f. Hotel staff, including housekeeping personnel, were paid by Jane Doe (A.M.C.)'s trafficker to stay quiet and not report the suspicious activity occurring in and around the rooms; and

g. Other obvious signs of trafficking consistent with the modus operandi of her trafficker and which included well known "red flags" for trafficking in a hotel.

79. Upon information and belief, multiple employees at the Subject Red Roof Inn, including management-level employees, observed and/or were made aware of these signs of trafficking while acting within the course and scope of their employment.

80. As such, the RRI Defendants and Franchisee Defendant knew or should have known that Jane Doe (A.M.C.) was being trafficked at the Subject Red Roof Inn.

81. Given these obvious signs, the RRI Defendants and Franchisee Defendant knew or should have known about the trafficking of Jane Doe (A.M.C.) based on their policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

### IV. Franchisee Defendant Could Have Stopped Jane Doe (A.M.C.)'s Trafficking But, Instead, Facilitated It

82. Franchisee Defendant is responsible for the acts and omission of all employees of the Subject Red Roof Inn because these acts and omissions were committed in the scope and course of employment and because Franchisee Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the risks, known to them, of human trafficking occurring at the Subject Red Roof Inn.

83. Franchisee Defendant, including through the staff at the Subject Red Roof Inn, had an opportunity to and did observe the signs of widespread sex trafficking at the Subject Red Roof Inn and, despite this, allowed this activity to continue unabated.

84. Franchisee Defendant, including through the staff at the Subject Red Roof Inn, had an opportunity to and did observe obvious signs that Jane Doe (A.M.C.) was being sex trafficked such that Franchisee Defendant knew or should have known that Jane Doe (A.M.C.) was being sex trafficked at the Subject Red Roof Inn. Nonetheless, Franchisee Defendant took no steps in response to these signs.

85. Franchisee Defendant facilitated Jane Doe (A.M.C.)'s trafficking at the Subject Red Roof Inn through numerous acts and omissions, including:

a. Allowing traffickers to reserve rooms while maintaining relative anonymity and non-traceability;

b. Failing to report suspected trafficking activity according to reasonable practices, industry standards, and/or applicable policies;

c. Despite seeing obvious signs of distress, failing to take any steps to inquire about the welfare of Jane Doe (A.M.C.);

d. Continuing to rent rooms to traffickers, including Jane Doe (A.M.C.)'s trafficker, despite the observed signs of trafficking;

e. Failing to take reasonable steps to hire, train and supervise staff to properly detect and respond to sex trafficking at the Subject Red Roof Inn;

f. Enabling traffickers to access ancillary services that supported trafficking activities, such as furnishing an unusually large number of sheets and towels to facilitate the commercial sex acts and providing disproportionate housekeeping services necessary to clean up the paraphernalia left after the transactions related to commercial sex; and

g. Providing the free Wi-Fi that Jane Doe (A.M.C.)'s trafficker used to advertise and solicit buyers to purchase commercial sex delivered by Jane Doe (A.M.C.) at the Subject Red Roof Inn.

86.     By ignoring or remaining willfully blind to obvious signs of trafficking, Franchisee Defendant provided traffickers a venue, with the cover of a legitimate business, where they could conduct their trafficking activities without having to expend significant efforts to avoid detection or interference.

**V.      The RRI Defendants Retained Control Over Relevant Aspects of Operations at the Subject Red Roof Inn and Thus Had Both the Opportunity and Duty to Prevent Sex Trafficking at the Subject Red Roof Inn, including Jane Doe (A.M.C.)'s Trafficking**

87.     The RRI Defendants retained control over the details and methods of aspects of the operation of the Subject Red Roof Inn that are directly relevant to the proliferation of sex trafficking at that property. As a result of this retained control and their direct involvement, the RRI Defendants participated in a venture with sex traffickers who were using the Subject Red Roof Inn as a venue for their trafficking. Moreover, as a result of this retained control, the RRI Defendants had both the opportunity and the duty to prevent Jane Doe (A.M.C.)'s trafficking.

88.     The RRI Defendants retained control over the training of the staff of the Subject Red Roof Inn regarding human trafficking and ways to detect and respond to signs of human trafficking. Effective training and education are the most important tools to prevent use of hotel facilities for sexual exploitation and human trafficking. If the RRI Defendants had exercised reasonable diligence in providing training, they would have prevented the Subject Red Roof Inn from being used to facilitate obvious and apparent sex trafficking, including the trafficking of Jane Doe (A.M.C.). By failing to take reasonable steps to provide appropriate training, despite the overwhelming evidence they had of an ongoing problem with use of their branded properties for sex trafficking, the RRI Defendants negligently facilitated sex trafficking.

89.     Beyond training, the RRI Defendants also retained control over the response of their hotels to human trafficking, including development of policies and procedures regarding

detection of and response to human trafficking. By retaining control in this area, the RRI Defendants assumed a legal duty to the patrons and guests of their hotels. By failing to exercise reasonable diligence in discharge of this duty, the RRI Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (A.M.C.) at the Subject Red Roof Inn.

90.     At the heart of Defendants' venture with traffickers (including Jane Doe (A.M.C.)'s trafficker) is the reservation of hotel rooms. Upon information and belief, the RRI Defendants retained control over the details of reservations at the Subject Red Roof Inn, including controlling the online reservation system that Franchisee Defendant was required to use, providing software systems Franchisee Defendant had to use to check guests in and charge for rooms, controlling the prices of rooms, setting all details of the customer loyalty program that Franchisee Defendant was required to implement, and setting detailed policies for things such as payment methods and requirements to show identification. Because reservations and payments were processed through their systems, the RRI Defendants had access to guest and payment information. The RRI Defendants thus directly participated, through their acts and omissions, in reserving rooms to traffickers, including Jane Doe (A.M.C.)'s trafficker. If the RRI Defendants had used reasonable diligence in setting, implementing, and enforcing appropriate policies, they would have detected Jane Doe (A.M.C.)'s trafficking and/or prevented Jane Doe (A.M.C.)'s trafficker from using their rooms to sexually exploit Jane Doe (A.M.C.). By failing to exercise reasonable diligence in discharge of this duty, the RRI Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (A.M.C.) at the Subject Red Roof Inn.

91.     The RRI Defendants retained the control to adopt and enforce policies for their branded properties, including the Subject Red Roof Inn, but failed to adopt and enforce appropriate

policies, which facilitated trafficking at the Subject Red Roof Inn and allowed Jane Doe (A.M.C.)'s trafficker to access rooms for the purpose of trafficking Jane Doe (A.M.C.).

92.     The RRI Defendants also retained control over issues related to reporting security and criminal activity, including human trafficking activity. On information and belief, the RRI Defendants adopted a policy that required staff at the Subject Red Roof Inn to report indicators of potential criminal activity on premises to the RRI Defendants. Based on the RRI Defendants' retained control over this area, they knew or—with reasonable diligence in implementing and enforcing their own policies—should have known that Jane Doe (A.M.C.) was being trafficked. By failing to exercise reasonable diligence in discharge of this duty, the RRI Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (A.M.C.) at the Subject Red Roof Inn.

93.     On information and belief, the RRI Defendants also retained control over property-specific data and customer data from the Subject Red Roof Inn—which they obtained by controlling the means and methods by which Franchisee Defendant recorded, stored, and reported that data—such that they knew or should have known about the ongoing trafficking that was occurring at the Subject Red Roof Inn during the time Jane Doe (A.M.C.) was trafficked there. However, on information and belief, the RRI Defendants were willfully blind to this data and continued to facilitate trafficking at the Subject Red Roof Inn by providing a venue—and associated services—where traffickers could profit from sexual exploitation with minimal risk of disruption.

94.     The RRI Defendants also retained control over the security of the Subject Red Roof Inn through various means including, upon information and belief, placing and monitoring security cameras, accepting and reviewing customer complaints, and inspecting the Subject Red Roof Inn. They also collected data regarding hotel operations and customers, including names, payment

information, reservation history, browsing data, and other details associated with their stay. Because the RRI Defendants retained this control, they had a duty to the patrons and visitors of the Subject Red Roof Inn. If the RRI Defendants had exercised reasonable care in the discharge of this duty, they would have detected and known about Jane Doe (A.M.C.)'s trafficking and avoided facilitating it. By failing to exercise reasonable diligence in discharge of this duty, the RRI Defendants facilitated sex trafficking, including the sex trafficking of Jane Doe (A.M.C.) at the Subject Red Roof Inn.

95.     The RRI Defendants also retained control over the safety and security of the experience at their branded properties by setting up systems for customers to report issues to the RRI Defendants rather than Franchisee Defendant. Despite doing this, the RRI Defendants failed to act reasonably in response to complaints about criminal activity and sex trafficking at their properties, including the Subject Red Roof Inn. If the RRI Defendants had acted reasonably and prudently in monitoring and responding to customer complaints, they would have reduced the rampant sex trafficking in their branded properties and would not have facilitated Jane Doe (A.M.C.)'s sex trafficking at the Subject Red Roof Inn.

96.     The RRI Defendants required Franchisee Defendant to offer free internet service to guests at the Subject Red Roof Inn and retained control over the details of that internet service and policies regarding its use. Upon information and belief, the RRI Defendants required Franchisee Defendant to use a particular platform, set policies, and retained access to data regarding guests' use of wi-fi. The RRI Defendants knew or should have known that sex traffickers used their internet to facilitate trafficking by advertising victims' commercial sex services. The RRI Defendants retained control over internet service and ultimately failed to enact policies to prevent Jane Doe (A.M.C.)'s trafficker from advertising commercial sex activity online and could have,

with reasonable diligence, used tools to determine when the Subject Red Roof Inn was being used to facilitate unlawful sexual exploitation. Despite mining and monetizing customer data for marketing and other purposes, the RRI Defendants further refused to expend the necessary resources to effectively implement and enforce anti-trafficking measures and reporting.

97.     Based on public reporting, investigations, criminal incidents, hotel reviews and comments, and direct reporting from Franchisee Defendant, the RRI Defendants had actual or constructive knowledge of pervasive sex trafficking throughout its owned hotel properties generally, and specifically at the Subject Red Roof Inn. The RRI Defendants, through their acts and omissions, knowingly received financial benefits from activity at their branded hotels, including the Subject Red Roof Inn, that the RRI Defendants knew or should have known was unlawful sex trafficking.

98.     If the RRI Defendants had acted reasonably, in compliance with industry standards, in compliance with their own promises, and/or in compliance with their own policies and procedures, Jane Doe (A.M.C.)'s trafficking would have been prevented.

99.     In addition to the RRI Defendants' direct involvement in the venture through the means outlined above, the RRI Defendants also participated in the venture through the acts and omissions of Franchisee Defendant, which is the RRI Defendants' actual agent for the purpose of operating the Subject Red Roof Inn.

100.     Upon information and belief, the RRI Defendants exercised systemic and pervasive control over Franchisee Defendant's operation of the Subject Red Roof Inn, including the methods and details of Franchisee Defendant's work, through ways including:

    a.  Controlling and requiring Franchisee to use a reservation and marketing system;

    b.  Controlling and requiring Franchisee to use a credit process system;

    c.   Dictating policies regarding forms of payment;

    d.   Setting prices and imposing required discounts on Franchisee;

    e.   Setting wages;

    f.   Making or influencing employment decisions;

    g.   Requiring standardized training for hotel employees;

    h.   Requiring Franchisee to collect guest data using the RRI Defendants' systems, to compile reports, and to make that data available to the RRI Defendants; and

    i.   Requiring Franchisee to comply with standards, policies, and rules adopted by the RRI Defendants on human trafficking, cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, or other hotel brand related policies published and communicated via property management systems, Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at the Subject Red Roof Inn.

101.    The RRI Defendants did not merely identify quality or outcome standards. Instead, they specifically directed the means and methods that Franchisee Defendant and the staff at the Subject Red Roof Inn should use for day-to-day operations and dictated many of the core tools that Franchisee Defendant was required to use to conduct those operations, including the means and methods of operations that directly caused Jane Doe (A.M.C.)'s damages.

102.    Upon information and belief, the RRI Defendants had the right to and actually did enforce their control over Franchisee Defendant through various methods including:

    a.   Inspections of the Subject Red Roof Inn;

    b.   Monitoring or auditing Franchisee for compliance with policies and expectations;

    c.   Directing Franchisee to take specific steps to come into compliance with detailed and exacting standards;

    d.   Mandating training and education; and

   e. The right to terminate the franchise agreement.

  103. The RRI Defendants are vicariously liable for the acts and omissions of their agent, Franchisee Defendant, and any sub-agents or employees of Franchisee Defendant with respect to operation of the Subject Red Roof Inn.

  104. In addition, both the RRI Defendants and Franchisee Defendant participated in the venture through the acts and omissions of the staff at the Subject Red Roof Inn because the RRI Defendants and Franchisee Defendant jointly employ or ratify the employment of staff at the Subject Red Roof Inn.

  105. Upon information and belief, the RRI Defendants exercised control over the terms and conditions of employment by:

   a. Posting jobs for their branded properties;

   b. Providing benefits to staff of their branded properties;

   c. Setting pay, pay parameters, or pay ranges for staff of their branded properties;

   d. Setting job qualifications;

   e. Setting job descriptions;

   f. Dictating staffing levels required at their branded properties;

   g. Making or influencing hiring decisions;

   h. Providing onboarding and ongoing training; and

   i. Maintaining employment records, including training records.

  106. The RRI Defendants and Franchisee Defendant acted as joint employers because, at the Subject Red Roof Inn, there is a high degree of interrelation of operations and profit sharing.

107. In ways described more fully above, the RRI Defendants and Franchisee Defendant knowingly received a financial benefit from participating in a venture with what they knew or should have known were sex traffickers, including Jane Doe (A.M.C.)'s sex trafficker, as follows:

    a. Sex traffickers, including Jane Doe (A.M.C.)'s sex trafficker, frequently used the Subject Red Roof Inn for their trafficking because they knew that staff members would look the other way. This occurred because the RRI Defendants and Franchisee Defendant had (1) failed to adopt and enact policies to effectively detect sex trafficking and stop use of their facilities to facilitate that trafficking; (2) failed to use reasonable care when hiring, retaining, supervising, and training staff at the Subject Red Roof Inn; and (3) affirmatively adopted policies and procedures that allowed sex trafficking to flourish.

    b. Both the RRI Defendants and Franchisee Defendant participated in this venture by acting jointly to rent rooms to traffickers. Franchisee Defendant provided "boots on the ground" for reservations, and the RRI Defendants retained control over reservation systems and applicable policies and guidelines as further described in this Complaint. They participated in the venture by continuing to rent rooms to Jane Doe (A.M.C.)'s trafficker long after they knew or should have known that Jane Doe (A.M.C.) was being subjected to unlawful trafficking.

    c. Defendants knowingly benefited from acquiring valuable customer data when they provided free Wi-Fi to patrons at the Subject Red Roof Inn. Defendants profited from data collected each and every time Jane Doe (A.M.C.)'s trafficker and buyers used their free Wi-Fi to advertise and solicit Jane Doe (A.M.C.) for commercial sex at the Subject Red Roof Inn.

    d. The RRI Defendants controlled policies and procedures relating to Wi-Fi, information technology, and the collection of guest web browsing data at the Subject Red Roof Inn. The RRI Defendants required Franchisee Defendant to use specific Wi-Fi service providers and to store their guest data on the RRI Defendants' centralized data platforms. The RRI Defendants had direct access to guest data through their centralized management platforms. Defendants then used this valuable guest data for marketing purposes and also retained data to sell to third parties.

    e. Defendants knowingly benefited from allowing the ongoing use of their Wi-Fi to access websites like Backpage, and other notorious pages used for the advertisement of commercial sex, knowing that if they cut off access to such pages, they would lose traffickers' and buyers' regular and profitable patronage.

    f. Defendants did not only provide these traffickers with a physical space but also with the cover of a legitimate business as a venue where they could profit from sexual exploitation with a low risk of disruption. This was done pursuant to an

implicit understanding with Defendants, which is evidenced by, among other things:

    i. Jane Doe (A.M.C.)'s trafficker was familiar to the staff at the Subject Red Roof Inn;

    ii. Jane Doe (A.M.C.)'s trafficker took no steps to conceal his activities from the staff at the Subject Red Roof Inn but, instead, freely made requests that would facilitate his trafficking activities without concern for detection or interference by that staff;

    iii. Despite policies and/or industry standards to the contrary, Defendants allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments and not requiring the identification card of the individual actually paying for the room;

    iv. Both RRI Defendants and Franchisee participated in this venture by providing additional services to traffickers (including Jane Doe (A.M.C.)'s trafficker), including but not limited to, internet access, excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms; and

    v. Defendants' venture with traffickers resulted in revenue from room rentals and other incidental purchases by traffickers, including Jane Doe (A.M.C.)'s trafficker, which accrued to the benefit of both the RRI Defendants and Franchisee. Each room rented at the Subject Red Roof Inn increased revenue for both the RRI Defendants and Franchisee.

108. Under the TVPRA, Defendants are jointly and severally liable for all damages a jury awards to Jane Doe (A.M.C.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking at the Subject Red Roof Inn.

### CAUSES OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

109. Jane Doe (A.M.C.) incorporates all previous allegations herein.

### I.    Beneficiary Liability under §1595(a) of the TVPRA (all Defendants)

110. Jane Doe (A.M.C.) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the

person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

111.    Through acts and omissions described in this Complaint, each Defendant received a financial benefit from participating in a commercial venture with sex traffickers, including Jane Doe (A.M.C.)'s trafficker, despite the fact that Defendants each knew or should have known that these traffickers were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, Defendants are liable to Jane Doe (A.M.C.) as beneficiaries under 18 U.S.C. §1595.

112.    In addition, through acts and omissions described in this Complaint, the RRI Defendants received a financial benefit from participating in a hotel franchising venture with Franchisee Defendant to operate the Subject Red Roof Inn despite the fact that Defendants knew or should have known that the venture facilitated violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) by traffickers operating out of the Subject Red Roof Inn. These violations happened within the scope of Franchisees Defendant's venture with the RRI Defendants operating the Subject Red Roof Inn. Defendants are thus liable to Jane Doe (A.M.C.) as beneficiaries under 18 U.S.C §1595 because they knew or should have known that their operation of the Subject Red Roof Inn facilitated violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) causing harm to Jane Doe (A.M.C.) while financially benefiting from their commercial hotel venture.

113.    Violations of 18 U.S.C §1595(a) by both the RRI Defendants and Franchisee Defendant as "beneficiaries" operated, jointly, with other acts and omissions of the RRI Defendants and Franchisee Defendant alleged in this Complaint, to cause Jane Doe (A.M.C.) to suffer substantial physical and psychological injuries and other damages as a result of being trafficked and sexually exploited at the Subject Red Roof Inn.

114. The ventures in which each Defendant participated were a direct, producing, and proximate cause of the injuries and damages to Jane Doe (A.M.C.).

## II. RRI Defendants' Vicarious Liability for Franchisee Defendant's Violations of the TVPRA (Actual Agency)

115. Franchisee Defendant acted as the actual agent of the RRI Defendants with respect to operation of the Subject Red Roof Inn because, as described above, at all relevant times the RRI Defendants exercised systemic control over Franchisee Defendant's day-to-day operations of the Subject Red Roof Inn, including the means and methods of operation.

116. Franchisee Defendant is the actual agent of the RRI Defendants with respect to operation of the Subject Red Roof Inn because, as described above, at all relevant times the RRI Defendants exercised systemic control over the aspects of Franchisee Defendant's operation of the Subject Red Roof Inn that caused Jane Doe (A.M.C.)'s injuries.

117. Under the TVPRA and federal common law, a principal is vicariously liable for the violations of its actual agent.

118. In addition to their own direct liability, the RRI Defendants are also vicariously liable to Jane Doe (A.M.C.) for the TVPRA violations of Franchisee Defendant, which is the RRI Defendants' actual agent.

119. As alleged above, Franchisee Defendant is directly liable to Jane Doe (A.M.C.) for violations of the TVPRA as a beneficiary under 18 U.S.C §1595(a). The RRI Defendants are vicariously liable to Jane Doe (A.M.C.) for those same violations.

## TOLLING OF LIMITATIONS

120. To the extent Defendants assert an affirmative defense of limitations, Jane Doe (A.M.C.) invokes the discovery rule. At the time of her trafficking, Jane Doe (A.M.C.) was under the physical control of her trafficker, who manipulated her through a combination of emotional

abuse and physical violence. While she knew she was being posted online and forced to engage in sex acts for her trafficker's financial benefit, she did not know that she was the victim of human trafficking as that term is defined by law or that her injury arose from being trafficked at the Subject Red Roof Inn. Like many survivors, Jane Doe (A.M.C.) internalized her exploitation and understood it through the lens of a dysfunctional relationship and personal failure—not as a victim of force, fraud, or coercion. Even after escaping her trafficker's physical control, the psychological manipulation instilled by her trafficker continued to impair her ability to understand her victimization. Jane Doe (A.M.C.) did not recognize the legal nature of her injury or the role of those who enabled and profited from her exploitation until well after the trafficking ended.

121.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (A.M.C.) invokes the doctrine of equitable tolling. As a result of being a victim of trafficking, Jane Doe (A.M.C.) faced extraordinary and ongoing circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit. These circumstances include years of sustained trauma and threats of abuse to herself and her family, introduced and maintained by her trafficker to ensure control. She continued to suffer the effects of psychological manipulation long after her trafficking ended. These impairments severely limited her ability to process what had happened to her, to recall key events and timelines, or to understand that she had legal rights and potential claims.

122.    Throughout her trafficking, Jane Doe (A.M.C.) was beaten, sexually assaulted, and psychologically manipulated by her trafficker. The trauma she endured left her with lingering impairments, including memory lapses, confusion, and an inability to understand the nature of her experiences. These impairments did not immediately disappear upon the end of her trafficking.

Instead, they continued to influence her beliefs, memories, and behavior for years, leaving her unable to recognize her experiences as sex trafficking.

123.    While under the physical control of her trafficker, Jane Doe (A.M.C.) did not have the freedom to investigate her claims, to identify those responsible, or to seek legal representation necessary to pursue her legal rights. After that physical control ended, she remained unable to conceptualize her experience as trafficking due to continued psychological trauma. At no point during or immediately after her exploitation did she believe she had been the victim of trafficking; she viewed her experience as the result of a toxic relationship and her own personal failings. It was only much later—after gaining distance from her trafficker's influence and beginning to process her trauma—that she came to understand what had occurred and to seek legal recourse.

124.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (A.M.C.) invokes the continuing tort doctrine. This lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendants, individually and in concert, at the Subject Red Roof Inn. The nature of this repeated conduct, and the ongoing harm it caused, supports application of the continuing tort doctrine to toll the limitations period.

125.    Jane Doe (A.M.C.) was trafficked at the Subject Red Roof Inn through March 27, 2015. Even after her trafficker's control ended, Jane Doe (A.M.C.) continued to suffer the lasting effects of his manipulation. These impairments—emotional instability, and a warped understanding of her own victimization—prevented her from recognizing the legal nature of her injuries or the role played by the entities that enabled or profited from her trafficking.

126.    This continuous trafficking resulted from Defendants' ongoing facilitation of sex trafficking at the Subject Red Roof Inn and Defendants' continued ventures with one another and with criminal traffickers. Defendants' conduct allowed the trafficking to continue over an extended

period of time and contributed to the lasting harm Jane Doe (A.M.C.) suffered. That harm did not end when she left the Subject Red Roof Inn or escaped her trafficker's physical control.

## **DAMAGES**

127.    Defendants' acts and omissions, individually and collectively, caused Jane Doe (A.M.C.) to sustain legal damages.

128.    Defendants are joint and severally liable for all past and future damages sustained by Jane Doe (A.M.C.).

129.    Jane Doe (A.M.C.) is entitled to be compensated for personal injuries and economic damages, including:

   a.   Actual damages (until trial and in the future);

   b.   Incidental and consequential damages (until trial and in the future);

   c.   Mental anguish and emotional distress damages (until trial and in the future);

   d.   Lost earnings and lost earning capacity (until trial and in the future);

   e.   Necessary medical expenses (until trial and in the future);

   f.   Life care expenses (until trial and in the future);

   g.   Physical pain and suffering (until trial and in the future);

   h.   Physical impairment (until trial and in the future);

   i.   Emotional impairment (until trial and in the future);

   j.   Exemplary/Punitive damages;

   k.   Attorneys' fees;

   l.   Costs of this action; and

   m.   Pre-judgment and all other interest recoverable.

## JURY TRIAL

130.    Jane Doe (A.M.C.) demands a jury trial on all issues.

## RELIEF SOUGHT

WHEREFORE, Jane Doe (A.M.C.) prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe (A.M.C.) against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (A.M.C.) may, in law or in equity, show herself to be justly entitled.


Dated: August 1, 2025                                Respectfully submitted,


                                                    */s/ Matthew J.P. Coffman*
                                                    Matthew J.P. Coffman (0085586)
                                                    Tristan T. Akers (0102298)
                                                    Coffman Legal, LLC
                                                    1550 Old Henderson Rd., Suite 126 Columbus, Ohio 43220
                                                    (614) 949-1181
                                                    (614) 386-9964 Facsimile
                                                    *mcoffman@mcoffmanlegal.com*
                                                    *takers@mcoffmanlegal.com*

                                                    and

                                                    **ANNIE MCADAMS PC**
                                                    Annie McAdams | SBN 24051014
                                                    2900 North Loop West, Suite 1130
                                                    Houston, Texas 77092
                                                    (713) 785-6262
                                                    (866) 713-6141 Facsimile
                                                    *annie@mcadamspc.com*

                                                    and

**SICO HOELSCHER HARRIS, LLP**
David E. Harris | SBN 24049273
Ramsey Al-Azem | SBN 24125576
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 653-3300
(361) 653-3333 Facsimile
*dharris@shhlaw.com*
*ralazem@shhlaw.com*

**ATTORNEYS FOR PLAINTIFF**